OPINION
{¶ 1} Defendant-appellant, Scott Griesheimer, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of two counts of violating R.C. 2903.08, and sentencing him to one year in prison. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} This case arises from an incident in which Scott Holloway suffered serious physical injury when he was run over by a motor vehicle driven by defendant. On July 16, 2004, defendant was indicted on one count of attempted murder, a violation of R.C. 2923.02 as applied to R.C. 2903.02 (count one); one count of felonious assault, a *Page 2 
violation of R.C. 2903.11 (count two); one count of aggravated vehicular assault, a violation of R.C. 2903.08(A)(1)(a) and a felony of the third degree (count three); and one count of vehicular assault,[1]
a violation of R.C. 2903.08(A)(2) and a felony of the fourth degree (count four). As pertinent to this appeal, count three of the indictment specifically alleged that defendant, in violation of R.C. 2903.08, and as a proximate result of committing a violation of R.C. 4511.19(A), caused serious physical harm to Mr. Holloway while defendant was operating a motor vehicle. Count four of the indictment specifically alleged that defendant, in violation of R.C. 2903.08, recklessly caused serious physical harm to Mr. Holloway while defendant was operating a motor vehicle.
 {¶ 3} As to all counts in the indictment, defendant waived his right to a trial by jury and elected to have the case tried by a judge of the trial court. In March 2005, the case was tried to the court. As pertinent to this appeal, the evidence at trial was as follows.
 {¶ 4} Mr. Holloway testified that he met his sister, Kelly Griesheimer (defendant's wife), at a bar called "O'Malley's" at approximately 4:30 p.m. on July 8, 2004. The two talked and drank beer at O'Malley's. They left O'Malley's in Ms. Griesheimer's car, a Chevrolet Monte Carlo, and went to another bar called "Fat Dogz" to see defendant. Upon arrival, Ms. Griesheimer and defendant got into an argument. Mr. Holloway observed defendant with a beer at the Fat Dogz bar. *Page 3 
 {¶ 5} Shortly after arriving at Fat Dogz, Mr. Holloway and Ms. Griesheimer left that bar in the Monte Carlo and went to the "Jade Kirin" bar on Broad Street. They met Denny Chappell at the bar, drank a couple of beers, and sang karaoke. They decided to leave the Jade Kirin when it closed, at approximately 2:30 a.m. At that time, Mr. Holloway had a "buzz" from drinking. Mr. Holloway had observed Ms. Griesheimer drinking, but she did not appear to him to be intoxicated. Ms. Griesheimer, who testified for the defense, testified that she drank beer that evening, but she could not specifically recall how many beers she drank. At trial, Ms. Griesheimer could not recall driving to the Jade Kirin. However, she remembered seeing defendant with another woman at Fat Dogz and leaving that bar. Ms. Griesheimer admitted that her memory of that night was compromised because of her intoxication.
 {¶ 6} Around closing time at the Jade Kirin, Mr. Holloway, Ms. Griesheimer, and Mr. Chappell exited the bar and walked to Mr. Chappell's car in the Waffle House parking lot, which was near the Jade Kirin parking lot. Defendant arrived in his Chevrolet Camaro and started "cussing and hollering" at Ms. Griesheimer. (Tr. 25.) Mr. Holloway testified that defendant appeared to be intoxicated when he arrived at the Waffle House because "he was slurring his words and everything when he was talking to" Ms. Griesheimer. (Tr. 61.) Defendant's appearance was consistent with how he looked when Mr. Holloway previously had seen him drunk.
 {¶ 7} At some point, defendant parked his Camaro and entered the Monte Carlo. Mr. Holloway testified that he jogged over to the Monte Carlo and tried to open the door to the car, but it was locked. He knocked on the driver's window in an attempt to get defendant to stop, and defendant made eye contact with him. According to Mr. Holloway's testimony, while he was standing at the driver's window, defendant put the car *Page 4 
in reverse, turned the wheels to the right, and ran over him. Defendant put the car in drive and again ran over Mr. Holloway. Mr. Holloway suffered extensive physical injuries as a result of the incident, which included multiple fractures in his face, paralysis on one side of his face, a torn "MCL" in his left knee, and dental problems.
 {¶ 8} On the night of the incident, Daniel Bennett went to the Jade Kirin with his wife, Peggy Bennett. Mr. Bennett drank six or seven beers at the Jade Kirin and Ms. Bennett only drank coffee. They stayed at the bar until closing. As they were leaving the front door, Mr. Bennett witnessed "a body crumple underneath" a Monte Carlo. (Tr. 66.) Mr. Bennett yelled, "Stop, motherfucker. Stop. * * * You just ran over him." Id. According to Mr. Bennett, the driver of the Monte Carlo, with "tires squealing," "pealed out and ran over him again." (Tr. 66, 76.) Mr. Bennett testified that Mr. Holloway initially was hit by the back of the car, and he could not recall whether Mr. Holloway was struck with the front wheels of the car.
 {¶ 9} Initially, as she and her husband were leaving the bar, Ms. Bennett was not looking in the direction of the incident. Her attention was drawn to the incident by her husband who was attempting to yell at the driver of the car. She heard the "screaming of tires" and saw Mr. Holloway get run over by the car. (Tr. 91.) After exiting the parking lot, the car "took off down Broad Street." (Tr. 92.) Ms. Bennett noticed that the driver's side window was open.
 {¶ 10} In the early hours of July 9, 2004, Franklin County Deputy Sheriff Charles Miller was dispatched to the Jade Kirin upon a report that a person had been struck by a vehicle. Upon receiving a description of the vehicle and the identity of the alleged driver, Deputy Miller searched the area for the vehicle. He proceeded to defendant's house, where he waited for defendant. While waiting at the house, Ms. Griesheimer, in Deputy *Page 5 
Miller's presence, called defendant. Deputy Miller heard Ms. Griesheimer say, "Why don't you come on home? You ran over my brother." (Tr. 110.) He heard defendant say, "No, you got the cops waiting on me." Id. Defendant returned to his house and was arrested. Deputy Miller's testimony indicated that approximately 30 minutes elapsed from the time he was dispatched to the scene until defendant was arrested. According to Deputy Miller, he did not notice any erratic driving when defendant arrived at his house in the Monte Carlo. Mr. Chappell also testified that he did not witness any erratic driving when defendant arrived at his house.
 {¶ 11} Deputy Miller testified that he had been trained on how to detect alcohol impairment in drivers. Deputy Miller's testimony indicated that he could smell an alcohol odor coming from defendant, that defendant was attempting to hold his breath when the authorities were trying to talk to him, and that defendant was "mushmouth[ed]." (Tr. 120.) Defendant refused to take any field sobriety tests and refused a blood alcohol test. Deputy Miller testified that, based on the circumstances and his training, he believed defendant was impaired.
 {¶ 12} At the conclusion of trial, the court found defendant not guilty as to counts one and two of the indictment and guilty as to counts three and four of the indictment. The trial court sentenced defendant to one year in prison as to count three and 12 months in prison as to count four and ordered that the sentences be served concurrently. The trial court suspended defendant's driver's license for three years, imposed court costs in the amount of $919, and ordered restitution to the Ohio Attorney General Victims of Crime fund in the amount of $31,572.02. The trial court entered its judgment on September 2, 2005. *Page 6 
 {¶ 13} Defendant timely appeals from that judgment and sets forth the following five assignments of error for our review:
 FIRST ASSIGNMENT OF ERROR
 The trial court erred, in violation of Ohio's allied offense statute as set forth in R.C. 2941.25, in imposing terms of incarceration for the offenses of aggravated vehicular assault as set forth in R.C. 2903.08(A)(1)(a) and (2).
 SECOND ASSIGNMENT OF ERROR
 There was insufficient evidence to support Appellant's conviction on a charge of aggravated vehicular assault premised upon reckless conduct. Moreover, the conviction was against the manifest weight of the evidence.
 THIRD ASSIGNMENT OF ERROR
 There was insufficient evidence to support Appellant's conviction on a charge of aggravated vehicular assault premised upon proof that he was intoxicated at the time that he committed the offense. Moreover, the conviction was against the manifest weight of the evidence.
 FOURTH ASSIGNMENT OF ERROR
 The trial court erred in imposing a term greater than the minimum period of incarceration, without making findings as required by R.C. 2929.14, upon a defendant with no prior history of imprisonment.
 FIFTH ASSIGNMENT OF ERROR
 The trial court erred in imposing sentences based on facts not found by a jury or admitted by Appellant. This omission violated Appellant's rights to a trial by jury and due process under the state and federal Constitutions.
 {¶ 14} By his first assignment of error, defendant argues that the trial court erred in not merging his convictions for purposes of sentencing. In response to defendant's first assignment of error, the state asserts that this matter should be remanded for resentencing in view of the apparent split in appellate court authority on the issue of *Page 7 
whether it is plain error for a trial court to impose sentences for allied offenses of similar import when the sentences are to be served concurrently. However, the state summarily asserts that the two offenses, when compared in the abstract, do not constitute allied offenses of similar import, pursuant to R.C. 2941.25, because a person can violate R.C. 2903.08(A)(1)(a) without violating R.C. 2903.08(A)(2), and, conversely, a person can violate R.C. 2903.08(A)(2) without violating R.C. 2903.08(A)(1)(a). Defendant's trial counsel did not object to the prison terms.
 {¶ 15} Defendant cites State v. Stinson (1984), 21 Ohio App.3d 14, for the proposition that evidence that a defendant was driving under the influence of alcohol is sufficient to support a finding of recklessness. Therefore, according to defendant's reasoning, a person who violates R.C. 2903.08(A)(1)(a), necessarily violates R.C. 2903.08(A)(2). Indeed, evidence that a person was driving under the influence of alcohol is admissible to prove recklessness. See State v. Broomfield (Sept. 4, 2001), Franklin App. No. 00AP-1420. However, that principle does not resolve the ultimate issue raised by defendant's first assignment of error.
 {¶ 16} Defendant's first assignment of error requires this court to analyze whether aggravated vehicular assault based upon alcohol-impaired driving, in violation of R.C. 2903.08(A)(1)(a), and vehicular assault based upon recklessness, in violation of R.C. 2903.08(A)(2), are allied offenses of similar import. R.C. 2941.25, Ohio's allied offense statute, protects against multiple punishments for the same criminal conduct which could violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. R.C. 2941.25 provides as follows:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the *Page 8 
indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 17} In State v. Rance (1999), 85 Ohio St.3d 632, the Supreme Court of Ohio held that R.C. 2941.25 requires a two-step test. First, courts must compare, in the abstract, the statutorily defined elements of offenses that are claimed to be of similar import. Id. at 638, citing R.C. 2941.25(A). In so doing, "[c]ourts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.'" Rance, at 638, quoting State v. Jones (1997), 78 Ohio St.3d 12, 14. Second, "if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus." Rance, at 638-639, citing both R.C.2941.25(B) and Jones, at 14.
 {¶ 18} Both R.C. 2903.08(A)(1)(a) and R.C. 2903.08(A)(2) require proof that the defendant caused serious physical harm to another while operating a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft. R.C. 2903.08(A)(1)(a) requires proof that the serious physical harm to another person resulted from the person violating R.C. 4511.19(A),[2] or a substantially equivalent municipal ordinance. R.C. *Page 9 
4511.19(A)(1)(a) imposes strict liability and does not require proof of a culpable mental state. See State v. Harding, Montgomery App. No. 20801, 2006-Ohio-481, at ¶ 61; State v. Sabo, Franklin App. No. 04AP-1114, 2006-Ohio-1521, at ¶ 18; State v. Culver,160 Ohio App.3d 172, 2005-Ohio-1359, at ¶ 68. R.C. 2903.08(A)(2), however, requires proof of the culpable mental state of recklessness as an essential element of the crime and does not require the person to be under the influence of alcohol, a drug of abuse, or a combination of them. Thus, when the elements of the two crimes are compared in the abstract, they both require proof of an element that is not required by the other. This finding is in accord with the Second District Court of Appeals decision in Culver, which resolved that, when R.C. 2903.08(A)(1)(a) and R.C.2903.08(A)(2) are compared in the abstract, the elements of aggravated vehicular assault and vehicular assault do not sufficiently correspond to constitute allied offenses of similar import.
 {¶ 19} Therefore, just as the court in Culver, we conclude that aggravated vehicular assault based upon alcohol impaired driving, in violation of R.C. 2903.08(A)(1)(a), and vehicular assault based upon recklessness, in violation of R.C. 2903.08(A)(2), are not allied offenses of similar import. Therefore, the trial court did not err in not merging defendant's convictions for purposes of sentencing. Accordingly, we overrule defendant's first assignment of error.
 {¶ 20} Defendant's second and third assignments of error allege that his convictions were supported by insufficient evidence and were against the manifest weight of the evidence. In determining the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the *Page 10 
prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 21} When assessing whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "`whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, at 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. Furthermore, "`[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"Thompkins, at 387.
 {¶ 22} By his third assignment of error, defendant challenges his conviction for violating R.C. 2903.08(A)(1)(a), which provides that "[n]o person, while operating or participating in the operation of a motor vehicle * * * shall cause serious physical harm to another person * * * [a]s the proximate result of committing a violation of [R.C.4511.19(A)] or of a substantially equivalent municipal ordinance." R.C.4511.19(A)(1)(a) prohibits a person from operating any vehicle within this state if, at the time of the *Page 11 
operation, the person is under the influence of alcohol, a drug of abuse, or a combination of them.
 {¶ 23} The fact that Mr. Holloway suffered serious physical harm when he was run over by the car operated by defendant is not in dispute. Defendant challenges the finding that he was operating the vehicle under the influence of alcohol. According to defendant, the state failed to meet its burden in proving that he engaged in impaired driving. Defendant also asserts that his conviction was based on circumstantial evidence. In this regard, he maintains that reliable measures of determining intoxication were not present in this case because there was no blood-alcohol test and there were no field sobriety tests. In addition, defendant asserts that witnesses observed him driving in a normal manner.
 {¶ 24} Defendant's argument relating to the absence of evidence of a blood alcohol test and a field-sobriety test is unpersuasive. The evidence indicated that defendant refused to take any blood-alcohol or field sobriety tests. "One accused of intoxication has no constitutional right to refuse to take a reasonably reliable chemical test for intoxication." Westerville v. Cunningham (1968), 15 Ohio St.2d 121, at paragraph two of the syllabus, citing Schmerber v. California (1966),384 U.S. 757, 86 S.Ct. 1826. The Cunningham court explained:
 Where a defendant is being accused of intoxication and is not intoxicated, the taking of a reasonably reliable chemical test for intoxication should establish that he is not intoxicated. On the other hand, if he is intoxicated, taking of such a test will probably establish that he is intoxicated. Thus, if he is not intoxicated, such a test will provide evidence for him; but, if he is intoxicated, the test will provide evidence against him. Thus, it is reasonable to infer that a refusal to take such test indicates the defendant's fear of the results of the test and his consciousness of guilt, especially where he is asked his reason for such refusal and he gives no reason which would *Page 12 
indicate that his refusal had no relation to such consciousness of guilt.
Id. at 122. Thus, "[t]he refusal of one accused of intoxication to take a reasonably reliable chemical test for intoxication may have probative value on the question as to whether he was intoxicated at the time of such refusal." Cunningham, at paragraph one of the syllabus. See, also,Maumee v. Anistik (1994), 69 Ohio St.3d 339, 344 (approving of neutral jury instruction, regarding evidence of refusal to submit to a chemical test, which allows the jury to consider the evidence of a refusal with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of alcohol).
 {¶ 25} In addition, defendant's reference to the testimony regarding whether he was driving in a "normal" manner as he approached his house, where the authorities were waiting for him, neglects to consider the evidence that approximately 30 minutes earlier he had knocked Mr. Holloway down with his car, twice drove over him, and raced away from the scene. That dangerous conduct obviously does not fall within the realm of "normal" driving.
 {¶ 26} Defendant's argument that the case against him was improperly based on circumstantial evidence is also unpersuasive. Circumstantial evidence is the "proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind." State v. Bentz (1981),2 Ohio App.3d 352, 355, fn. 6, citing 1 Ohio Jury Instructions (1968), Section5.10(d). "[C]ircumstantial evidence and direct evidence inherently possess the same probative value[.]" State v. Jenks (1991),61 Ohio St.3d 259, at paragraph one of the syllabus. Thus, "proof of guilt may be made by circumstantial evidence as well as by real evidence *Page 13 
and direct or testimonial evidence, or any combination of these three classes of evidence." State v. Griffin (1979), 13 Ohio App.3d 376, 377.
 {¶ 27} Although there was no direct evidence of the alcohol content in defendant's blood, the totality of the evidence in this case clearly supported the inference that defendant was operating the motor vehicle while under the influence of alcohol. Mr. Holloway testified that he observed defendant slurring his words when defendant talked to Ms. Griesheimer near the Jade Kirin bar. Deputy Miller's testimony indicated that the odor of alcohol emanated from defendant's person. Deputy Miller testified that defendant talked in a "mushmouthed" manner and tried to hold his breath when the authorities were attempting to talk to him. Based on his personal observations, and his training on how to detect alcohol and drug impairment in drivers, Deputy Miller opined that defendant was impaired. In addition, the evidence demonstrated that, while operating the Monte Carlo, defendant struck Mr. Holloway and twice drove over him. Lastly, defendant refused to take any blood-alcohol test.
 {¶ 28} Upon reviewing the evidence, we conclude that any reasonable trier of fact could have found defendant guilty of aggravated vehicular assault based upon alcohol impaired driving. Moreover, defendant's conviction for aggravated vehicular assault was not against the manifest weight of the evidence, as there is no indication that the trier of fact clearly lost its way in reaching that guilty verdict.
 {¶ 29} Therefore, we overrule defendant's third assignment of error.
 {¶ 30} By his second assignment of error, defendant challenges his conviction for violating R.C. 2903.08(A)(2), which required the state to prove that defendant recklessly caused serious physical harm to Mr. Holloway while defendant was operating a motor vehicle. Defendant argues that he was not acting in a reckless manner when Mr. *Page 14 
Holloway was struck by the Monte Carlo. Defendant argues that the evidence at trial demonstrated that Mr. Holloway did not knock on the driver's window and he was not standing to the side of the vehicle when he was run over. Defendant argues that Mr. Holloway was standing in a position not clearly visible to the driver, i.e., in a "blind spot, "when he was struck.
 {¶ 31} R.C. 2901.22(C) defines the culpable mental state of recklessness as follows:
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
 {¶ 32} As outlined above, evidence indicated that defendant was under the influence of alcohol when he was operating the Monte Carlo. Additionally, Mr. Holloway testified that he knocked on the window of the Monte Carlo in an attempt to get defendant's attention. According to Mr. Holloway, he made eye contact with defendant. Mr. Holloway's testimony indicated that, even though Mr. Holloway was standing next to the car, defendant turned the front wheels to the right and backed the car over him. Moreover, the testimony at trial indicated that defendant, after running over Mr. Holloway in reverse, drove the car, with tires squealing, forward over Mr. Holloway and then down the street. Based on that evidence, any rational trier of fact could have found that defendant recklessly caused serious physical harm to Mr. Holloway while defendant was operating a motor vehicle.
 {¶ 33} Apparently in support of his argument that his conviction for violating R.C. 2903.08(A)(2) was against the manifest weight of the evidence, defendant cites to *Page 15 
inconsistencies in the witnesses' testimonies regarding where Mr. Holloway was standing when he was initially struck and whether the driver's side window was down. According to Mr. Bennett's testimony, defendant hit Mr. Holloway with the back bumper of the car; whereas, Mr. Holloway testified that he was standing to the side of the car when he was initially struck by the car. Additionally, Ms. Bennett testified that the driver's side window was down as defendant fled the scene, which was inconsistent with Mr. Holloway's testimony that he knocked on the driver's side window before defendant drove the car over him. Although there appeared to be some inconsistency between the testimony of Mr. Holloway, Mr. Bennett, and Ms. Bennett, as to whether Mr. Holloway was standing behind the car, or to the side of the car, when he was struck, and whether the driver's side window was down, the trial court, as the trier of fact in this case, was in the best position to resolve those inconsistencies and to determine the significance of that evidence. Most simply, we cannot find that those apparent inconsistencies in the testimonies necessitate a conclusion that the trial court, acting as the trier of fact, clearly lost its way in finding defendant guilty of violating R.C. 2903.08(A)(2).
 {¶ 34} Defendant also argues that Mr. Holloway's testimony was inconsistent with the nature of the accident. In support, defendant asserts that it is illogical that Mr. Holloway could have been run over by a car moving in reverse if he was standing near the side window of the car. We disagree. If a car is driven in reverse and the front wheels are turned to the right, it is entirely reasonable that the front end of the car will move to the left. Nonetheless, defendant's theory that Mr. Holloway was hit by the back bumper of the car in a blind spot does not explain why defendant did not stop after knocking Mr. Holloway down, after driving over him in reverse, or after driving over him going forward. *Page 16 
 {¶ 35} Based on the foregoing, we conclude that defendant's conviction for violating R.C. 2903.08(A)(2) was supported by sufficient evidence and was not against the manifest weight of the evidence. Accordingly, we overrule defendant's second assignment of error.
 {¶ 36} Defendant's fourth assignment of error alleges that the trial court erred in imposing a non-minimum prison term as to his vehicular assault conviction because it failed to make the findings required under R.C. 2929.14(B). Defendant notes that the permissible range of prison sentences under R.C. 2929.14(A)(5) for his fourth degree felony offense is six to 18 months. In this case, the trial court sentenced defendant to 12 months in prison for the fourth degree felony offense. The trial court entered its judgment sentencing defendant for his convictions on September 2, 2005.
 {¶ 37} On February 27, 2006, and during the pendency of this appeal, the Supreme Court of Ohio released State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. In Foster, the Supreme Court of Ohio, followingBlakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, andApprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348, found portions of Ohio's felony sentencing scheme, including R.C. 2929.14(B), unconstitutional because those portions required judicial fact-finding in violation of a defendant's Sixth Amendment right to a trial by jury. The Foster court severed the unconstitutional provisions from Ohio's felony sentencing laws. Pursuant to Foster, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. *Page 17 
 {¶ 38} In the case at bar, defendant argues that the trial court failed to make the necessary findings for imposing a non-minimum sentence pursuant to a statute which has since been declared unconstitutional. In State v. Knopf, Franklin App. No. 05AP-1201,2006-Ohio-3806, a defendant made essentially the same argument. InKnopf, this court stated:
 After Foster, trial courts now have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences. Foster, at ¶ 100; Draughon, at ¶ 9. Ifwe remanded this matter for resentencing, we would instruct the trial court to do what it already did: sentence appellant within the statutory range without making factual findings or providing any reasons for its sentence. We decline to remand this case for such a futile act.
Id. at ¶ 11. Therefore, even assuming arguendo that the trial court failed to make findings under R.C. 2929.14(B), if we were to remand this matter, we would instruct the trial court to do what it already purportedly did: sentence defendant within the statutory range without making factual findings.
 {¶ 39} Accordingly, applying Knopf, we overrule defendant's fourth assignment of error.
 {¶ 40} Under his fifth assignment of error, defendant contends that the trial court imposed a non-minimum sentence based on findings not made by a jury, in violation of the Sixth Amendment to the United States Constitution. Defendant argues that this case must be remanded with instructions that the minimum sentence be imposed for his fourth degree felony conviction.
 {¶ 41} As stated above, in regard to defendant's fourth assignment of error, the Supreme Court of Ohio following Apprendi andBlakely, found portions of Ohio's felony *Page 18 
sentencing scheme, including R.C. 2929.14(B), unconstitutional because those portions required judicial fact-finding in violation of a defendant's Sixth Amendment right to a trial by jury. TheFoster court concluded that cases pending on direct review "must be remanded to trial courts for new sentencing hearings[.]" Id. at ¶ 104. In this regard, this court has recognized the "broad language the Supreme Court of Ohio used in Foster when it ordered resentencing for all cases pending on direct review." See State v. Draughon, Franklin App. No. 05AP-860, 2006-Ohio-2445, at ¶ 7. However, this court has also concluded that "a defendant who did not assert a Blakely challenge in the trial court waives that challenge and is not entitled to a resentencing hearing based on Foster." Id. In other words, "aBlakely challenge is waived by a defendant sentenced afterBlakely if it was not raised in the trial court." Id. at ¶ 8.
 {¶ 42} Blakely was decided on June 24, 2004. Defendant's sentencing hearing occurred on August 31, 2005. However, defendant's counsel did not raise error in the trial court on the basis of Blakely. Therefore, we conclude that defendant has waived his Blakely challenge for purposes of this appeal.
 {¶ 43} Consequently, we overrule defendant's fifth assignment of error.
 {¶ 44} Having overruled all five of defendant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
FRENCH and McGRATH, JJ., concur.
[1] Although no party has raised the issue, we note that in the caption of the indictment, count four is mislabeled as "Aggravated Vehicular Assault (2903.08 R.C.) (F-4)" (emphasis added). In addition, the trial court's judgment entry states that defendant was found guilty of two counts of aggravated vehicular assault, as charged in the indictment in counts three and four. The substance of count four of the indictment alleged a violation of R.C. 2903.08(A)(2); i.e. that defendant recklessly caused serious physical harm to Scott Holloway while defendant was operating a motor vehicle. R.C. 2903.08(C)(1) provides that whoever violates R.C. 2903.08(A)(2) is guilty of "vehicular assault." In addition, pursuant to R.C. 2903.08, aggravated vehicular assault is either a felony of the second or third degree, depending on the circumstances. Vehicular assault is either a third or fourth degree felony, depending on the circumstances. The offense alleged in count four was charged as a fourth degree felony. Furthermore, as to count four, the trial court sentenced defendant within the statutory range for fourth degree felonies. Accordingly, we review defendant's convictions for aggravated vehicular assault (count three) and vehicular assault (count four).
[2] R.C. 4511.19(A) states, in part, as follows:
 (1) No person shall operate any vehicle * * * within this state, if, at the time of the operation, any of the following apply:
 (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them. * * * *Page 1