JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, James Hartman, appeals from a judgment finding him guilty of two counts of drug trafficking, one count of drug possession, and one count of possessing criminal tools. For the following reasons, we affirm.
 {¶ 2} In June 21, 2006, the Cuyahoga County Grand Jury indicted Hartman on four-counts: two counts of drug trafficking, in violation of R.C. 2925.03; one count of drug possession, in violation of R.C. 2925.11; and one count of possessing criminal tools, in violation of R.C. 2923.24. Hartman entered a plea of not guilty to the charges.
 {¶ 3} The Grand Jury also indicted two co-defendants at the same time. Hartman and one of his co-defendants, Jermaine Doss, were tried together, while a third co-defendant, Tyrone Johnson, was tried separately. Doss was charged with drug possession and tampering with evidence.
 {¶ 4} The following evidence was presented to the jury.
 {¶ 5} William Mazur, a Cleveland Police Officer in the Community Service Unit, testified that on June 9, 2006, he was surveying the area of East 13th Street and Chester Avenue. He explained that his department receives a lot of drug-related complaints in that area. He indicated that in a twenty-month period, they made 196 arrests from Parkview Apartments, a high-rise apartment building located at 1802 East 13th Street, on the corner of East 13th and Chester.
 {¶ 6} He explained that his department had learned from previous arrests that people who want to buy drugs go to this building, use a phone outside the building, and call *Page 4 
someone in the building. Then, a few minutes later, a person comes out of the building with only the amount of drugs necessary for that particular sale.
 {¶ 7} Officer Mazur testified that on June 9, 2006, he observed Hartman come out of the building, and saw two males approach Hartman. Officer Mazur said he then saw Hartman pull "two white rocks out of his pocket." Officer Mazur stated, "[i]t was indicative to me to be crack cocaine." Officer Mazur explained that Hartman "pulled it out" and "handed one to each person, Jermaine Doss and Tyrone Johnson. In exchange for that rock they gave him U.S. currency, paper cash."
 {¶ 8} Officer Mazur stated that he was approximately 40 yards away from the transaction and was viewing it through binoculars. He said it was daylight, and there were no other people in the vicinity. He testified that he could clearly see the white rocks, but he could not see exactly how much money was exchanged. Based on his observations,
Officer Mazur radioed for assistance, giving the location and descriptions of the men. He observed the "take-down units" arrive. Through the binoculars, Officer Mazur saw Doss immediately throw something to the ground (which turned out to be a crack pipe that tested positive for cocaine), and put something else in his mouth. Officer Mazur also observed Johnson put something in his mouth. He said he was not able to see what either man had put in his mouth. Officer Mazur testified that Doss swallowed whatever it was that he had put in his mouth, but Johnson was not able to, and he spit it on the ground. The officers were able to recover it, and it tested positive for cocaine. They also recovered approximately $79 from Hartman. *Page 5 
 {¶ 9} Officer Jeffrey Yasenchack testified that he received a call from Officer Mazur requesting assistance because he had observed "some drug transactions." When he arrived at the scene, Officer Yasenchack said that he observed Doss immediately throw an object to the ground, which turned out to be a crack pipe, and he "made a motion to his mouth." Officer Yasenchack said he looked in Doss's mouth, but did not see anything. He then saw Johnson coughing and spit something out of his mouth. He collected it for evidence, and it tested positive for cocaine.
 {¶ 10} Officer Lawrence Smith testified that he found $78.90 on Hartman when he patted him down.
 {¶ 11} Scott Miller testified that he works in the Cleveland Police Department's forensic laboratory. He identified evidence that was collected at the scene. He stated that the suspected crack pipe and "rock" tested positive for cocaine. The cocaine weighed .05 grams.
 {¶ 12} Co-defendant Doss testified in his defense. He stated that he was "addicted to PCP," but had been sober for "29 months and ten days." At the time of his arrest, he was living in a homeless shelter and working as a "civil worker." In order to maintain that position, Doss said he had to remain sober and was tested randomly.
 {¶ 13} On the day in question, Doss said he was walking down the street when he saw Hartman "leaving out of the Parkview Apartments." Doss said that when he saw Hartman, he asked him for a cigarette and Hartman gave him one. Doss testified that he and Hartman "have came across each other's path in the county jail on different occasions." Doss explained that was where he first met Hartman, when they were in the "same pod," and they *Page 6 
would work out together. Doss stated that when he was talking to Hartman, a few other men pulled up to them in a car and got out. Doss knew one of the men as Darius Smith and the other was a man he knew only as "Trip." A few minutes later, Doss said that Officers Smith and Yasenchack arrived, frisked them, and searched Darius Smith's van.
 {¶ 14} Doss said that another police car arrived 45 to 60 minutes later, and Tyrone Johnson was in the back seat of the cruiser. The police got Johnson out of the police car, searched him, and found drugs on him. The police then arrested Johnson and Hartman.
 {¶ 15} Doss stated that he had never tried crack cocaine. He denied throwing something to the ground that day, denied putting anything in his mouth, and denied giving money to Hartman. He admitted to having an extensive criminal record.
 {¶ 16} The jury found Hartman guilty of all counts. The trial court sentenced Hartman to twelve months in prison on each count, to be served concurrently to one another.
 {¶ 17} It is from this judgment that Hartman appeals, raising two assignments of error for review:
 {¶ 18} "[1.] Appellant was denied effective assistance of counsel in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 {¶ 19} "[2.] The trial court erred when it convicted defendant-appellant of two counts of drug trafficking, drug possession, and possession of criminal tools because the verdicts were against the manifest weight of the evidence." *Page 7 
 {¶ 20} In his first assignment of error, Hartman claims that his "trial counsel failed in his duty as defense counsel to object to the testimonial statements of Co-Defendant-Doss when he stated that he new [sic] the Defendant-Appellant while both were serving time in jail and both shared the same pod." He argues that this was "tantamount to impeaching the credibility" of Hartman.
 {¶ 21} In Strickland v. Washington (1984), 466 U.S. 668, the Supreme Court of the United States set forth the two-pronged test for ineffective assistance of counsel. It requires that the defendant show (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. The first prong "requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. The second prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." Id.
 {¶ 22} In evaluating whether a petitioner has been denied the effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976), 45 Ohio St.2d 71, paragraph four of the syllabus. To show that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus. *Page 8 
 {¶ 23} The record in this case reveals that Hartman's counsel did object to Doss's testimony regarding his association with Hartman in the county jail. The trial court allowed the testimony, over objection. Therefore, Hartman's counsel's performance was not deficient, and Hartman does not meet the first prong under Strickland.
 {¶ 24} Hartman's first assignment of error is overruled.
 {¶ 25} In his second assignment of error, Hartman argues that the weight of the evidence does not support any of his convictions. We disagree.
 {¶ 26} In evaluating a challenge to the verdict based on manifest weight of the evidence, the Ohio Supreme Court declared in State v.Thompkins (1997), 78 Ohio St.3d 380, 387:
 {¶ 27} "[a]lthough a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. [State v. Robinson (1955), 162 Ohio St. 486, 487]. Weight of the evidence concerns `the inclination of the greater amount of credibleevidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount ofcredible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' (Emphasis added.) [Black's Law Dictionary (6 Ed. 1990) 1594]. *Page 9 
 {¶ 28} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. [Tibbs v.Florida (1982), 457 U.S. 31, 42]. See, also, State v. Martin (1983),20 Ohio App.3d 172, 175 (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')."
 {¶ 29} The jury found Hartman guilty on one count of drug trafficking under R.C. 2925.03(A)(1), and one count of drug trafficking under R.C. 2925.03(A)(2), and found the amount of the controlled substance, cocaine, was less than one gram. The jury also found Hartman guilty of possession of drugs, in violation of R.C. 2925.11(A).
 {¶ 30} R.C. 2925.03 provides:
 {¶ 31} "(A) No person shall knowingly do any of the following:
 {¶ 32} "(1) Sell or offer to sell a controlled substance;
 {¶ 33} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." *Page 10 
 {¶ 34} R.C. 2925.11(A) provides, "[n]o person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 35} Officer Mazur testified that he observed Hartman take what looked like two rocks of crack cocaine out of his pocket and hand one to Doss and one to Johnson. In exchange, Officer Mazur saw Doss and Johnson hand Hartman "paper cash." When the takedown unit arrived, Officer Mazur saw Doss and Johnson put something in their mouths. Officer Yasenchack saw Johnson spit something out of his mouth, which tested positive for cocaine. Officer Smith testified that he found $78.90 on Hartman's person.
 {¶ 36} Hartman argues that the identity of the item exchanged, and whether money was exchanged for the item was not proven beyond a reasonable doubt. We disagree.
 {¶ 37} "Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.State v. Griesheimer, 10th Dist. No. 05AP-1039, 2007-Ohio-837, citingState v. Bentz (1981), 2 Ohio App.3d 352, 355. Circumstantial evidence and direct evidence inherently possess the same probative value.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. Thus, proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. State v. Griffin (1979),13 Ohio App.3d 376, 377." (Parallel citations omitted.) State v. Johnson, 8th Dist. No. 89504, 2008-Ohio-1716, at _62.
 {¶ 38} After reviewing the entire record and weighing all the evidence, we find that the jury did not clearly lose its way when it found Hartman guilty of drug possession and *Page 11 
drug trafficking. Although Doss testified to the contrary, the jury heard credible, circumstantial evidence establishing that Hartman had possession and control of less than one gram of cocaine, and sold it to Doss and Johnson in exchange for money. The jury was free to believe the testimony of three police officers over the testimony of Doss, who readily admitted to his extensive criminal background.
 {¶ 39} The jury also found Hartman guilty of possessing criminal tools under R.C. 2923.24, and found that Hartman intended to use money as a criminal tool to commit drug trafficking. R.C. 2923.24 provides:
 {¶ 40} "(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.
 {¶ 41} "(B) Each of the following constitutes prima-facie evidence of criminal purpose:
 {¶ 42} "(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating the dangerous ordnance, materials, or parts are intended for legitimate use;
 {¶ 43} "(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;
 {¶ 44} "(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use." *Page 12 
 {¶ 45} In State v. Wilson (June 9, 1994), 8th Dist. Nos. 64442 and 64443, 1994 Ohio App. LEXIS 2508, this court explained:
 {¶ 46} "A prima facie case of criminal purpose is shown when the substance, device, instrument or article is commonly used for criminal purposes and the circumstances indicate the item is intended for criminal use. R.C. 2923.24(B). Since currency does not fall within one of the circumstances which constitute `prima facie evidence of criminal' purpose under R.C. 2923.24(B), the state was required to prove, beyond a reasonable doubt, that appellant possessed or had control over this money with purpose to use it criminally, without the benefit of the inference provided by this statute." Id. at 26-27.
 {¶ 47} After reviewing the entire record and weighing all the evidence, we find that the jury did not clearly lose its way when it found Hartman guilty possessing criminal tools. Officer Mazur saw Hartman accept "paper cash" in exchange for two rocks of crack cocaine. The money was clearly "intended for criminal use."
 {¶ 48} Hartman's second assignment of error is without merit.
 {¶ 49} Accordingly, the judgment of the Cuyahoga County Court of Common Pleas is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been *Page 13 
affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, A.J., and ANN DYKE, J., CONCUR *Page 1