[Cite as *State v. Abdul-Hagg*, 2016-Ohio-7888.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 103974

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## IBRAHIM ABDUL-HAGG

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-594492-A

**BEFORE:** Jones, A.J., Celebrezze, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** November 23, 2016

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1360 East 9th Street
Suite 600
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Ryan J. Bokoch
           Carl Mazzone
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PER CURIAM:

{¶1} Defendant-appellant, Ibrahim Abdul-Hagg ("appellant"), appeals his attempted murder and felonious assault convictions arguing that they are not supported by sufficient evidence and against the manifest weight of the evidence. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} The instant matter arose from a shooting that took place on December 27, 2014, at the McDonald's on St. Clair Avenue and East 105th Street, on Cleveland's east side. The victims, Kyron Marlin ("Marlin"), Latasha Sailes ("Sailes"), and an individual known as "Petey," were in a vehicle in the McDonald's drive-through waiting to receive their order. As the victims were waiting at the second window, the shooter approached the victims and opened fire into the vehicle, striking Marlin in the leg. Sailes, who was driving the vehicle, sped away from the shooter and took Marlin to MetroHealth Hospital. The victims did not report the shooting to the authorities; however, hospital personnel notified the police.

{¶3} In January 2015, officers executed a search warrant for "[e]vidence of gang activity[,] paraphernalia, documentation, [and] phones" at appellant's residence in Euclid, Ohio. (Tr. 305.) During the search, officers recovered a lockbox and a key ring that contained the key to the lockbox. The officers opened the lockbox and found a firearm and cash.

{¶4} In Cuyahoga C.P. No. CR-15-594492-A, the Cuyahoga County Grand Jury

returned a 13-count indictment charging appellant with (1) attempted murder, in violation of R.C. 2923.02 and 2903.02(B); (2) attempted murder, in violation of R.C. 2923.02 and 2903.02(B); (3) attempted murder, in violation of R.C. 2923.02 and 2903.02(B); (4) felonious assault, in violation of R.C. 2903.11(A)(1); (5) attempted felonious assault, in violation of R.C. 2923.02 and 2903.11(A)(1); (6) attempted felonious assault, in violation of R.C. 2923.02 and 2903.11(A)(1); (7) felonious assault, in violation of R.C. 2903.11(A)(2); (8) felonious assault, in violation of R.C. 2903.11(A)(2); (9) felonious assault, in violation of R.C. 2903.11(A)(2); (10) drug trafficking, in violation of R.C. 2925.03(A)(2); (11) drug possession, in violation of R.C. 2925.11(A); (12) possessing criminal tools, in violation of R.C. 2923.24(A); and (13) illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(_)(1).

{¶5} Counts 1, 4, and 7 pertained to Marlin; Counts 2, 5, and 8 pertained to Sailes; and Counts 3, 6, and 9 pertained to Petey. Counts 1 through 9 contained criminal gang activity specifications, one- and three-year firearm specifications, and forfeiture of a weapon specifications. Counts 10 through 13 contained various forfeiture specifications. Appellant pled not guilty to the indictment.

{¶6} A bench trial commenced on November 30, 2015. Defense counsel moved for a Crim.R. 29 judgment of acquittal at the close of the state's case and at the close of all the evidence. The trial court denied both motions. At the close of trial, the court found appellant guilty of attempted murder, as charged in Count 1, felonious assault, as charged in Counts 4 and 7, and the underlying one- and three-year firearm specifications.

The trial court found appellant not guilty of the underlying gang specifications and the remaining counts in the indictment.

{¶7} The trial court immediately proceeded to sentencing. The parties agreed that Counts 1, 4, and 7 merged for sentencing purposes, and the state elected to sentence appellant on Count 1. The trial court sentenced appellant to an aggregate prison term of eight years: five years on the attempted murder count to be served consecutively with the three-year firearm specification.

{¶8} Appellant filed the instant appeal assigning two errors for review:

I. The trial court erred in entering a judgment of conviction that was not supported by sufficient evidence.

II. The trial court erred in entering a judgment of conviction that was against the manifest weight of the evidence.

## II.    Law and Analysis

### A. Sufficiency

{¶9} In his first assignment of error, appellant argues that his convictions are not supported by sufficient evidence.

{¶10} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶11}** In support of his sufficiency challenge, appellant emphasizes that none of the witnesses identified him as the shooter. Furthermore, appellant contends that there was a lack of direct evidence and, as a result, the state had to rely on circumstantial evidence to prove his guilt.

**{¶12}** The state may use either direct evidence or circumstantial evidence to prove the elements of a crime. *See, e.g., State v. Durr*, 58 Ohio St.3d 86, 92, 568 N.E.2d 674 (1991); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus; *State v. Bokeno*, 12th Dist. Butler No. CA2011-03-044, 2012-Ohio-4218, ¶ 12. Circumstantial and direct evidence are of equal probative value. *Jenks* at *id*. Circumstantial evidence is "proof of facts or circumstances by direct evidence from which the trier of fact may reasonably infer other related or connected facts that naturally or logically follow." *State v. Seals*, 8th Dist. Cuyahoga No. 101081, 2015-Ohio-517, ¶ 32, citing *State v. Beynum*, 8th Dist. Cuyahoga No. 69206, 1996 Ohio App. LEXIS 2143 (May 23, 1996); *see also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("'Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.'"), quoting *State v. Griesheimer*, 10th Dist. Franklin No. 05AP-1039, 2007-Ohio-837, ¶ 26.

**{¶13}** The Ohio Supreme Court "has 'long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Cassano*, 8th Dist. Cuyahoga

No. 97228, 2012-Ohio-4047, ¶ 13, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990). The question is whether the state presented sufficient evidence that, if believed, would support appellant's attempted murder and felonious assault convictions beyond a reasonable doubt.

**{¶14}** In the instant matter, there was no direct evidence linking appellant to the shooting. Thus, the state's case rested on eyewitness testimony and circumstantial evidence. The state's theory of the case was that appellant carried out the McDonald's shooting in retaliation for a shooting that occurred at his grandmother's house the previous month on Thanksgiving. After reviewing the record, we find that the state presented sufficient evidence, if believed, that would support this theory.

**{¶15}** First, Officer Sean Coleman, Officer Kenneth Ryan, and CutThroat gang member L.W. testified about the Thanksgiving shooting at appellant's grandmother's house.

**{¶16}** Cleveland Police Officer Sean Coleman testified that he responded to the shooting on Thanksgiving at appellant's grandmother's house. Officer Coleman explained that appellant was the victim of the shooting, but that he had not been hit. Officer Coleman stated that appellant did not know who was shooting at him.

**{¶17}** Cleveland Police Officer Kenneth Ryan testified that he also responded to the Thanksgiving shooting. Appellant told Officer Ryan that he had no idea who shot at him or why he was shot at. Officer Ryan believed the Thanksgiving shooting was gang-related. Furthermore, Officer Ryan stated that a member of the Cleveland

Peacemakers Alliance was at the scene and told him that the shooting was gang-related.

{¶18} L.W., a member of the CutThroat gang, testified on behalf of the state. L.W. testified that he has been a member of the gang for three or four years. He explained that he has known appellant since middle school, and that he and appellant were both "starters" who were involved in establishing the gang. L.W. stated that he heard about a shooting that occurred in November 2014 at appellant's grandmother's house. L.W. explained that he spoke with appellant about the shooting, and that appellant told him that "[Marlin]" — the victim in the instant matter — was involved in the shooting. L.W. testified that after the shooting, appellant told him that "when [appellant] see[s Marlin] he's going." L.W. explained that "he's going" means that "when you see somebody you [are] going to beat them up, stuff like that." (Tr. 163.)

{¶19} Further, Officer Dante Aponte, Detective Jarod Durichko, L.W., Salesha Baksh, Sailes, Detective James Kooser, Detective James Skernivitz, and Detective Christopher Mobley testified about the McDonald's shooting.

{¶20} Cleveland Police Officer Dante Aponte testified that he responded to the McDonald's shooting and spoke with the manager and a drive-through employee. Officer Aponte explained that the manager did not see the shooting, but the drive-through employee did. Officer Aponte testified that the drive-through employee described the shooter as a black male with a goatee, mustache, and an afro. Furthermore, he explained that the employee stated that the shooter's vehicle was a green Pontiac Sunfire. He testified that the employee "heard approximately seven shots" fired. Officer Aponte

spoke with Marlin at the hospital. Marlin informed Officer Aponte that "[a] male walked up to their vehicle while they were waiting for their food and shot rounds into the car." (Tr. 135.) Marlin told Officer Aponte that when they pulled into McDonald's, he noticed that the shooter was sitting in a green Pontiac Sunfire and staring at them.

{¶21} Cleveland Police Detective Jarod Durichko testified that he responded to the McDonald's after hearing a radio call for shots fired. Detective Durichko explained that while he was searching the area for leads, a female witness "nervously waved [him] down" on East 103rd Street. Detective Durichko testified that the female witness "said she heard some gunfire and about 30 seconds afterwards she saw a vehicle travel at a high rate of speed northbound on East 103rd Street." (Tr. 149.) The female witness described the vehicle as "a smaller two door forest green vehicle with tinted windows and * * * possibly a hatchback." Detective Durichko testified that in June 2014, he pulled appellant over and issued him a citation. He stated that appellant was driving a green Pontiac Sunfire at the time.

{¶22} L.W. testified that he heard about the McDonald's shooting on the news. L.W. stated that he asked appellant about the shooting during a FaceTime video call. When L.W. asked appellant about the shooting, appellant "just put his hand up to his mouth like telling [L.W.] to be quiet." (Tr. 168.) L.W. took appellant's response to mean that "appellant probably did it." L.W. testified that appellant drove a green Sunfire. L.W. stated that appellant has a gun and that the gun is a "[f]orty-five." L.W. explained that every time he saw appellant, appellant had his gun with him.

{¶23} Salesha Baksh ("Baksh") testified that she is a DNA analyst with the Cuyahoga County Regional Forensic Science Laboratory. Baksh conducted DNA testing of the gun recovered from the lockbox. Baksh obtained a DNA profile with major and minor components from the gun's hand grip and trigger. Baksh obtained a mixture, or a DNA profile from at least three individuals from the gun's barrel and slide. Baksh obtained a mixture with major and minor components from the gun's magazine. She explained that a major component in a DNA profile is "the component in the profile in which one person has contributed more DNA or higher level of DNA." (Tr. 238.) Baksh stated that the minor component in a profile "would be a less contribution, so less DNA contributed to that profile." She compared appellant's DNA to the DNA profile obtained from the gun, and concluded that appellant's DNA profile (1) matched the major DNA component from the gun's hand grip and trigger, (2) could not be excluded as a possible contributor of the DNA mixture obtained from the barrel and slide, and (3) matched the major DNA component from the gun's magazine. Baksh testified that she did not determine who contributed to the minor DNA profiles.

{¶24} Sailes testified that she was in the vehicle with Marlin when the shooting occurred. Sailes was driving, Marlin was in the back seat, and Petey was in the passenger's seat. She explained that as she was waiting for her food at the second window in the drive-through, somebody starting shooting. She stated that she heard gunshots and breaking glass, and that she put her head down. She testified that she shifted the car from park into drive and drove off. She explained that she drove to the

hospital because Marlin said he was hurt. She stated that she did not call the police after the shooting because she was scared. She testified that she was not able to see the shooter.

{¶25} Cleveland Police Detective James Kooser testified that he is a firearms examiner in the forensics lab. Detective Kooser stated that he conducted a test fire of the Llama .45-caliber pistol that officers recovered from the lockbox. Detective Kooser explained that he compared the bullets and cartridge cases from the test fire to the bullets and cartridge cases from the crime scene. Detective Kooser concluded that the Llama .45-caliber pistol — which belonged to appellant — fired the cartridge casings that were recovered from the McDonald's crime scene. (Tr. 287.)

{¶26} Cleveland Police Detective James Skernivitz testified that he works in the department's gang impact unit. Detective Skernivitz stated that he assisted in both the investigation of the McDonald's shooting and the execution of a search warrant at appellant's residence in Euclid. Detective Skernivitz explained that officers determined that appellant resided in the residence by conducting surveillance, and following appellant to the location on several occasions. Detective Skernivitz testified that he was personally involved with the search of appellant's bedroom. Detective Skernivitz explained that he ascertained that the room was in fact appellant's bedroom because "[appellant] stated it." Detective Skernivitz testified that officers discovered a black lockbox that contained a firearm and cash in appellant's room. He further testified that officers found a set of keys in the same general vicinity of the lockbox. Detective

Skernivitz explained that he asked appellant if the set of keys among which the officers located the key to the lockbox belonged to him. Appellant told Detective Skernivitz that the keys did, in fact, belong to him; however, appellant claimed that the lockbox was not his.

**{¶27}** Cleveland Police Detective Christopher Mobley testified that he is assigned to the department's gang impact unit. Detective Mobley testified that appellant is a member of the CutThroat gang and that he goes by the nickname "EB." Detective Mobley testified about appellant's Twitter account. He stated that appellant's Twitter handle in January 2015 was "CT EB CT4L." (Tr. 339.) He explained that "CT4L" stands for "CutThroat for life." Detective Mobley testified that on January 15, 2015, appellant posted a tweet that said "CutThroat starter" with the hashtag "tell-the-feds-come-get-me." Detective Mobley further testified about a Vine video that was posted on January 16, 2015. Detective Mobley explained that in the video, "[appellant] states, I'm CT for life, so CutThroat for life. [Appellant] says, I'll take your life, and then he swipes a large knife across his throat." (Tr. 351.) Detective Mobley testified that Marlin was a member of the "Lakeview to Locke" or "L2L" gang. Detective Mobley testified that the L2L and CutThroat gangs were feuding in December 2014. Finally, Detective Mobley testified that appellant owned and operated a green Pontiac Sunfire.

**{¶28}** Appellant suggests that the house in which the officers recovered the gun was a "trap house" rather than his residence. In support of his argument, appellant

mistakenly relies on Detective Mobley's testimony regarding a house on Hathaway Avenue in which officers previously executed a search warrant. The house in which the officers recovered the gun was located on East 208th Street in Euclid, Ohio. Thus, appellant's reliance on Detective Mobley's testimony is misplaced.

{¶29} After reviewing the record, and viewing the evidence in a light most favorable to the state, we find that a rational trier of fact could have determined beyond a reasonable doubt that appellant was guilty of attempted murder and felonious assault. Accordingly, appellant's first assignment of error is overruled.

### B. Manifest Weight

{¶30} In his second assignment of error, appellant argues that his convictions are against the manifest weight of the evidence.

{¶31} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶32} Although we review credibility when considering the manifest weight of the

evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶33}** In support of his manifest weight challenge, appellant argues that L.W.'s desire to receive a reduced sentence casts doubt on the veracity of his testimony.

**{¶34}** L.W. testified that he was arrested on January 29, 2015. He stated that at the police station, an FBI agent told him that he was going to do "gorilla time" and that "things look[ed] pretty bad for [him.]" (Tr. 183.) He explained that "gorilla time" means a lot of time. He testified that if he gave the officers what they wanted, he would not have to do "gorilla time" and that his case would stay in juvenile court.

**{¶35}** In *State v. Holloway*, 8th Dist. Cuyahoga No. 101289, 2015-Ohio-1015, two jailhouse informants testified on behalf of the state against the defendant-appellant in exchange for plea agreements for reduced charges. *Id*. at _ 18. On appeal, appellant argued that his convictions were against the manifest weight of the evidence and

challenged the informants' credibility. *Id*. at _ 39. Specifically, appellant claimed that the informants "cooperated with the state and lied on the witness stand in exchange for a better plea deal because they both were in county jail facing serious charges." *Id*. at _ 43. This court rejected appellant's argument, concluding that:

> While [the informants] may have had ulterior motives when contacting the prosecutor, the jury observed [their] appearance and demeanor, heard the testimony about their prior criminal histories and the plea deals they received, and found their testimony to be credible.

*Id*. at ¶ 44.

{¶36} In the instant matter, like *Holloway*, we find that the trial court had sufficient information to judge the credibility of L.W. L.W. explained to the court that he was on probation and that he pled guilty to participating in a criminal gang and other charges, and agreed to testify during appellant's trial. L.W. testified that the gang he pled guilty to participating in was the CutThroat gang. L.W. explained that as a result of his plea agreement, his case remained in juvenile court, rather than being bound over to the common pleas court, and that the maximum sentence he could receive would be incarceration up until the age of 21.

{¶37} The trial court, as the trier of fact, was in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining a witness's credibility. *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17, citing *Antill*, 176 Ohio St. at 66, 197 N.E.2d 548. Furthermore, the trial court had sufficient information to judge each witness's credibility and "was free to believe all, part, or none of the testimony of each witness." *State v.*

*Colvin*, 10th Dist. Franklin No. 04AP-421, 2005-Ohio-1448, ¶ 34; *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16. We cannot say that this is the exceptional case where the evidence weighs heavily against the convictions nor that the trial court clearly lost its way and created a manifest miscarriage of justice. Accordingly, appellant's convictions are not against the manifest weight of the evidence.

{¶38} Appellant's second assignment of error is overruled.

### III. Conclusion

{¶39} After thoroughly reviewing the record, we find that appellant's attempted murder and felonious assault convictions are supported by sufficient evidence and are not against the manifest weight of the evidence.

{¶40} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


LARRY A. JONES, SR., ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., JUDGE

MARY J. BOYLE, JUDGE