[Cite as *State v. Wilson*, 2017-Ohio-2980.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104333**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WILLIE WILSON, JR.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED; REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-598675-A

**BEFORE:** E.A. Gallagher, P.J., McCormack, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** May 25, 2017

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Anna M. Faraglia
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, P.J.:

{¶1} Defendant-appellant Willie Wilson, Jr. appeals his convictions in the Cuyahoga County Court of Common Pleas. For the following reasons, we affirm but remand for the trial court to issue a nunc pro tunc entry in compliance with *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659.

**Factual and Procedural Background**

{¶2} Wilson and his codefendant, James Alexander, were charged with two counts of aggravated murder, murder, three counts of attempted murder, aggravated burglary, two counts of kidnapping, six counts of felonious assault all with attendant one-and three-year firearm specifications and two counts of having weapons while under disability. The case proceeded to a joint jury trial where the following facts were adduced.

{¶3} At 2:48 a.m. on April 14, 2015, Miyazhane Vance and her brother, Brandon Fisher, were shot in Vance's apartment at 656 East 99th Street. Vance was shot nine times and suffered fatal gunshot wounds to her head and upper abdomen. She was shot in her bedroom while her son, A.V., slept next to her in bed and her daughter, Z.V., slept in a nearby crib. Fisher suffered five life threatening gunshot wounds to the face, neck and left arm.[1] Fisher was transported to MetroHealth Medical Center where he was treated for injuries to his cervical vertebra, left carotid and vertebral arteries and an

---

[1]Fisher, other testifying witnesses and medical records were consistent in describing the above injuries. The trauma surgeon who treated Fisher testified, however, that he only suffered two gunshot wounds: to the face and left arm.

extensive fracture to his humerus. A permanent stent was placed in his neck to support one of his arteries and doctors were unable to remove a bullet that remains permanently lodged behind his face. He was placed in a medically induced coma for three days following his initial treatment.

{¶4} When Fisher regained consciousness, he implicated Willie Wilson and James Alexander in the shootings. Initially he described Wilson as the shooter but in subsequent interviews, and at trial, he described both Wilson and Alexander as having shot him and his sister.

{¶5} The evidence at trial established that Fisher, Wilson and Alexander were friends in 2014. They would smoke and drink together. The three possessed guns that they either bought or stole. Fisher testified that Wilson possessed a 9 millimeter handgun. Wilson began dating Vance in December 2014. Fisher moved into Vance's apartment and began living with her around the same time.

{¶6} During March 2015, Fisher had a falling out with Wilson and Alexander. He stopped hanging around with Wilson because Wilson "started acting crazy" and was "trying to get me to do stuff I didn't want to do." Fisher described an incident near the end of March 2015 when Wilson stole a .38 Taurus revolver from Fisher's friend, L.R., when Fisher, L.R., Wilson and Alexander were drinking together on a rapid transit train. Fisher did not see Wilson or Alexander after that incident until the night of the shooting.

{¶7} A second incident occurred three to four days prior to the shooting. Fisher testified that he was given the impression that his sister had broken up with Wilson. He,

Vance, L.R. and one of Vance's friends went to the home of one of Wilson's former girlfriends looking for Wilson for the purpose of demanding that he return a key he possessed to Vance's apartment. Wilson was not present at the home and an argument ensued during which Vance threw rocks at the home and attempted to fight with the former girlfriend. The incident culminated with L.R. kicking in a side door to the home and the group fleeing after the homeowner threatened to call the police.

{¶8} After the incident, Fisher was contacted via a Facebook call by Wilson. Wilson stated that he heard that Fisher was looking for him. Fisher replied that they just needed Vance's apartment keys returned. Alexander also joined in the call, admonishing Fisher for kicking the door at the former girlfriend's home and acting "tough."

{¶9} On the evening of April 13, 2014, Fisher and L.R. stole a van and were pursued by police. Fisher eluded arrest and returned to Vance's apartment at approximately 12:30 a.m. Vance and her two children were present in the apartment along with a friend of Vance, D.A., who had begun living in the apartment in the beginning of April. Vance and her children went to sleep in the back bedroom, D.A. went to sleep in her own room and Fisher slept near the locked front door to the apartment unit.

{¶10} Fisher testified that he was awakened after 2:00 a.m. by Wilson who was using his key to open the door to the apartment. Wilson and Alexander entered the apartment and stepped over Fisher who was laying on the floor near the door. Alexander had a .357 revolver in his hand and Wilson had his gun concealed with his

hands in his pockets. Alexander confronted Fisher saying, "I heard you wanted to bust me." Before Fisher could reply, Wilson began firing, striking Fisher twice in the arm. Fisher testified that Alexander then shot him once in the back of the neck. Fisher saw Wilson and Alexander enter Vance's room and heard shots before he passed out. He regained consciousness and attempted to get up but Wilson returned and shot him two more times in the right side of his face causing him to black out again.

{¶11} When Fisher regained consciousness, Wilson and Alexander were gone. He crawled out of the apartment and into the hallway seeking help. Fisher was discovered by D.A., who was unharmed in the incident and who called 911. D.A. testified that she was awoken by the sound of male voices talking in the living room and kitchen and then heard gunshots. She did not see the shooters who fled the apartment before she exited her bedroom. She and another neighbor heard the backdoor of the apartment complex, which was unlocked, slam shut shortly after the shooting.

{¶12} Police and emergency medical personnel responded to the scene and transported the victims to MetroHealth Medical Center. Police recovered eight 9 millimeter caliber shell casings from the scene. The door to Vance's apartment unit showed no signs of forced entry. Wilson's DNA was recovered from the interior and exterior doorknob of the first floor rear exit door although the Cuyahoga County Medical Examiner's office could not determine if it had been deposited there the night of the shooting or at a prior time.

{¶13} While awaiting trial, Wilson instructed a third party, during a jailhouse phone call, to communicate with Fisher through Wilson's Facebook account, named "KingWill Da Shooter." In the Facebook exchange, Wilson indicated that he had seen a video statement made by Fisher and said, "Just continue to be a snitch and Amma continue being a gangsta[.]"

{¶14} Jacob Kunkle, an FBI special agent, testified that he performed a cellular analysis on Alexander's cell phone and found that Alexander had an outgoing phone call that ended at 2:43 a.m. the night of the shooting and that the records placed Alexander's cell phone in the vicinity of the crime scene at that time.

{¶15} The state nolled one count of having weapons while under disability against Wilson. Wilson was found guilty of all remaining offenses. At sentencing the trial court merged as allied offenses the various offenses unique to each of the four victims. The state elected to proceed to sentencing on the count of aggravated murder pertaining to Vance and the three attempted murder charges pertaining to Fisher, A.V. and Z.V. Wilson was also sentenced on the counts of aggravated burglary and having weapons while under disability which were not merged as allied offenses. The trial court imposed a prison term of 30 years to life for aggravated murder, 11 years on each of the three attempted murder counts, 11 years on the aggravated burglary count and 36 months on the having weapons while under disability count. The trial court ordered the three attempted murder sentences and the having weapons while under disability sentence to be served concurrently but all remaining sentences to be served consecutively, including five

three-year terms for the firearm specifications attached to the counts of aggravated murder, attempted murder and aggravated burglary. Wilson's aggregate sentence was 56 years to life.

**Law and Analysis**

**I. Motion to Sever**

{¶16} In his first assignment of error, Wilson argues that the trial court erred in denying a motion to sever and be tried separately from Alexander. Wilson argues that his confrontation clause rights were violated in his joint trial with Alexander when the state introduced a statement made by Alexander at the time of his arrest wherein he stated: "I didn't do the shooting. I only watched it, but they didn't want to hear that last time."

{¶17} R.C. 2945.13, which governs joinder in felony cases, states:

When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately.

{¶18} Pursuant to Crim.R. 8(A), two or more offenses may be joined if the offenses "are of the same or similar character * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." While the law favors the joinder of offenses that are of the "same or similar character," the court may sever the charges under Crim.R. 14 upon a showing of prejudice. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).

**{¶19}** To effectively claim error in the joinder of defendants in a single trial, an appellant must make an affirmative showing that his rights were prejudiced. *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus. Prejudice is not demonstrated if one offense would have been admissible as "other acts" evidence under Evid.R. 404(B) or if the evidence of each crime joined at trial is simple and direct. *State v. Schaim*, 65 Ohio St.3d 51, 59, 1992-Ohio-31, 600 N.E.2d 661 (1997).

**{¶20}** Furthermore, a jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated. *Torres* at 343-344. As such, joinder is not prejudicial when the evidence is direct and uncomplicated and can reasonably be separated as to each offense. *Id.*

**{¶21}** Here, Wilson contends that the trial court violated the rule announced in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and adopted by the Ohio Supreme Court in *State v. Moritz*, 63 Ohio St.2d 150, 407 N.E.2d 1268 (1980). In *Bruton*, the United States Supreme Court found that the introduction of the accomplice's out-of-court confession at defendant's trial violated the defendant's Sixth Amendment right to cross-examine witnesses against him. *Id.* at 126. In *Moritz*, the Ohio Supreme Court adopted the holding in *Bruton* and held that:

> An accused's right of cross-examination secured by the confrontation clause of the Sixth Amendment is violated in a joint trial with a non-testifying codefendant by the admission of extrajudicial statements made by the codefendant inculpating the accused.

*Moritz* at paragraph one of the syllabus, citing *Bruton*.

**{¶22}** The *Moritz* court further stated:

> "[T]he Bruton rule applies with equal force to all statements that tend significantly to incriminate a co-defendant, whether or not he is actually named in the statement. The fact that the incrimination amounts to a link in a chain of circumstances rather than a direct accusation cannot dispose of the applicability of the Bruton rule. Just as one can be convicted on circumstantial evidence, one can be circumstantially accused."

*Moritz* at 155, quoting *Fox v. State*, 179 Ind.App. 267, 384 N.E.2d 1159 (1979).

{¶23} Seven years after the *Moritz* decision, the United States Supreme Court revisited the topic in *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (superseded by statute on other grounds). In *Richardson*, the court held that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence. *Id*. at 211. The court further limited the holding of *Bruton* by distinguishing between a confession that is "incriminating on its face" and, therefore, in violation of *Bruton* from a confession that amounts to "evidence requiring linkage" in that it may become incriminating in respect to a codefendant "only when linked with evidence introduced later at trial." The court refused to extend the rule of *Bruton* to confessions falling within the latter category.

{¶24} In *In re: Watson*, 47 Ohio St.3d 86, 548 N.E.2d 210 (1989), the Ohio Supreme Court adopted the rule of *Richardson* for the Confrontation Clause of Section 10, Article I of the Ohio Constitution with respect to redacted confessions. *Id*. at 91. The court did not comment on the underlying rationale of espoused in *Richardson* that

limited the holding in *Bruton* or what difference, if any, remained between *Richardson* and *Moritz* for the purposes of Section 10, Article I of the Ohio Constitution.

{¶25} Even if we were to assume that there exists a divergence between the approach of the Ohio Supreme Court and the United States Supreme Court with respect to their respective confrontation clauses, we find no violation of the *Bruton* rule in this instance. Alexander's statement did not tend to significantly incriminate Wilson. Alexander's statement confirmed his own presence at a shooting and inferred that a third party fired the shots. It did not facially incriminate Wilson. Furthermore, the state's case against Wilson was not based on circumstantial evidence but rather on the direct account of Fisher. As such, Alexander's statement does not operate as a "link in a chain of circumstances" to incriminate Wilson. Fisher's detailed account of the event incriminated Wilson, not the statement by Alexander.

{¶26} Finally, within this assignment of error, Wilson also argues that he was prejudiced by the testimony regarding the location of Alexander's cell phone during the time the offenses were committed. Despite his contention to the contrary, the evidence was plainly relevant as to Alexander's whereabouts on the night in question and does not qualify as a codefendant statement under *Bruton*.

{¶27} Wilson's first assignment of error is overruled.

**II. The Expert Testimony of Special Agent Kunkle**

**{¶28}** In his second assignment of error, Wilson argues that the trial court erred in denying a motion in limine to exclude the expert testimony of Special Agent Kunkle regarding the whereabouts of Alexander's cell phone on the night in question.

**{¶29}** The trial court conducted a *Daubert* hearing regarding Kunkle's proffered testimony and found him to be an expert. Wilson argues that (1) Kunkle's testimony should have been excluded pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), because he failed to establish that his cell phone data analysis was reliable, (2) Kunkle's expert report did not satisfy Crim.R. 16(K), and (3) Kunkle's evidence was otherwise inadmissible under Evid.R. 401, 402 and 403.

**{¶30}** To begin, this court has previously held that testimony concerning a defendant's cell phone records and the location of the cellular towers used by a defendant's phone in relation to locations relevant to the crime constitutes lay opinion testimony that does not require "specialized knowledge, skill, experience, training, or education" regarding cellular networks. *State v. Daniel*, 2016-Ohio-5231, 57 N.E.3d 1203, ¶ 69 (8th Dist.), citing *State v. Dunn*, 8th Dist. Cuyahoga No. 101648, 2015-Ohio-3138.

**{¶31}** To the extent that Kunkle's testimony exceeded simply detailing Alexander's phone records and which cellular towers were used, an analysis under *Daubert* would be appropriate. It was firmly established during the trial court's *Daubert*

hearing that Kunkle possessed specialized knowledge, skill, experience, training, and education regarding cellular analysis.

{¶32} Wilson does not expressly challenge Kunkle's qualifications but rather the reliability of cellular analysis in general. To determine the reliability of expert scientific testimony, a court must assess whether the reasoning or methodology underlying the testimony is scientifically valid. *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 611, 1998-Ohio-178, 687 N.E.2d 735, citing *Daubert* at 592-593. To make that assessment, several factors are to be considered: (1) whether the theory or technique has been tested; (2) whether it has been subjected to peer review; (3) whether there is a known or potential rate of error; and (4) whether the methodology has gained general acceptance. *Id.*; *see alsoValentine v. PPG Industries, Inc.*, 158 Ohio App.3d 615, 2004-Ohio-4521, 821 N.E.2d 580, _ 25 (4th Dist.). None of these factors are determinative. *Coe v. Young*, 145 Ohio App.3d 499, 504, 763 N.E.2d 652 (11th Dist. 2001). Rather, the inquiry is flexible, focusing on the underlying principles and methodologies and not on the resulting conclusions. *Miller* at 611.

{¶33} The same reliability challenge to expert cellular phone analysis testimony presently raised by Wilson has been rejected under both federal and Ohio law. *See, e.g.*, *State v. White*, 2d Dist. Montgomery No. 26093, 2015-Ohio-3512, ¶ 28 (summarizing the plethora of federal authorities finding historical cell phone data analysis to be reliable for the purpose of determining the general location of a cell phone at a given time). The *White* court noted that the "vagaries of cell phone technology affect the persuasiveness of

the circumstantial evidence, but they do not render [an expert's] testimony inadmissible." *Id.,* quoting *U.S. v. Rosario*, S.D.N.Y. No. 09-CR-415-2, 2014 U.S. Dist. LEXIS 160626, *6 (Nov. 14, 2014). Our decision in *Daniel* reached the same conclusion —  that the "potential problems with estimating a cell phone's location based on phone records" go to the weight of the cellular testimony not its reliability or admissibility. *Daniel* at ¶ 70. We note that the various shortcomings of cellular analysis were thoroughly explored at trial in this instance.

{¶34} Under the same reasoning, Wilson argues that Kunkle failed to conduct a "drive test" to further define the actual scope of the various cell towers in the area undermined the reliability of his testimony.   However, Wilson fails to cite any authority requiring a "drive test" to establish reliability and we see no reason to depart from the view adopted in *Daniel* regarding the shortcomings of cellular analysis.

{¶35} We further find no violation of Crim.R. 16(K) based on the expert report provided in this instance that included the same graphics utilized at trial to demonstrate Kunkle's findings.   Nor do we find any merit to Wilson's argument that Kunkle's testimony was irrelevant or substantially outweighed by unfair prejudice.

{¶36} Wilson's second assignment of error is overruled.

### III. Irrelevant Evidence and Other Acts Testimony

{¶37} In his third assignment of error, Wilson argues that the trial court erred in allowing the state to introduce irrelevant evidence and other acts testimony in violation of Evid.R. 401, 402, 403 and 404(B).

**{¶38}** The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). Within this broad discretion is the trial court's duty "to determine whether testimony is relevant and to balance its potential probative value against the danger of unfair prejudice." *State v. Clark*, 8th Dist. Cuyahoga No. 95928, 2011-Ohio-4109, ¶ 32. Evid.R. 402 allows the admission of any relevant evidence so long as the probative value of that evidence is not outweighed by its prejudicial effect, it does not confuse the issue or mislead the jury. Evid.R. 403(A). Our inquiry is limited to whether the trial court acted unreasonably, arbitrarily or unconscionably in deciding to exclude the testimony.

**{¶39}** Evid.R. 404(B) states that:

[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**{¶40}** Wilson first argues that trial court erred in allowing photographs depicting him in possession of firearms and alcohol and displaying gang symbols to be published to the jury. The record reflects, however, that the state specifically informed the trial court that the photographs would not be published and instead, the photographs were published to the jury by counsel for Wilson's codefendant. Wilson conceded at trial that he did not

object to the codefendant's decision to publish the photos to the jury. Furthermore, the photographs were largely cumulative of other testimony that established that Fisher, Wilson and Alexander were friends, they spent time smoking and drinking together, they possessed firearms and they had connections to gangs.

{¶41} We find no prejudice in this instance and cannot say that the trial court abused its discretion in allowing the photographs to be admitted after Wilson's codefendant previously published them to the jury without an objection.

{¶42} Wilson next argues that the court erred in allowing the state to admit the recorded phone call made by Wilson to his friend instructing her to communicate with Fisher via Facebook messages while he remained in jail. Wilson stipulated at trial that it was his voice on the recorded call and the authenticated recording was used to establish that Wilson was the source of the Facebook communication to Fisher. Wilson's statement accusing Fisher of being a "snitch" while simultaneously describing himself as a "gangsta" was relevant as a potential statement against interest made by Wilson.

{¶43} Next Wilson argues that the trial court erred in allowing a Cleveland police detective to testify regarding the present status of various gangs that were referenced at trial. Wilson argues that the detective was improperly allowed to testify without being admitted as an expert. The detective's testimony was limited to various factual statements regarding the names and locations of two gangs that were repeatedly referenced by the defense during trial. Wilson's argument that this testimony lacked relevance is more persuasive because the detective's testimony did not address the gang

affiliations of Fisher, Wilson or Alexander. Nor did it add any other particularly relevant facts pertaining to the subject shooting.

{¶44} We cannot find any prejudice to Wilson in the limited and largely irrelevant testimony that simply provided an overview of the Cleveland gangs mentioned during trial. The testimony plainly did not implicate Evid.R. 404(B). Although the testimony likely should have been excluded as irrelevant, we find any error in its admission to be harmless pursuant to Crim.R. 52(A). *State v. Mims*, 8th Dist. Cuyahoga No. 100520, 2014-Ohio-5338, ¶ 60; *State v. Bell*, 8th Dist. Cuyahoga No. 97123, 2012-Ohio-2624, ¶ 59.

{¶45} For the same reason we find no merit to Wilson's argument that the trial court erred in allowing the state to introduce photographs of a van Fisher stole in the hours before the shooting. The van-related testimony and photographs provided context to Fisher's account of the night and did not relate in any way to Wilson. Wilson himself raised Fisher's theft of the van and gang membership in his opening statement. To the extent that the van-related evidence could be considered irrelevant, we nonetheless find no prejudice to Wilson and find any error in its admission to be harmless.

{¶46} Wilson's third assignment of error is overruled.

### IV.   Bolstering of Fisher's Credibility

**{¶47}** In his fourth assignment of error, Wilson argues that the trial court erred in allowing the Cleveland police detective who investigated this case to express her belief that Fisher was consistent in his various statements to police regarding the crime. In response to questioning regarding inconsistencies in Fisher's statements to police, the investigating detective stated:

> He's been consistent from the day that he came out of the coma to the day he testified in this court, in my opinion, on the circumstances surrounding his shooting and the homicide of Miyazhane Vance.

**{¶48}** This court has held that it is reversible error to admit testimony from a purported expert or lay witness attesting to the believability of another's statements. *State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989). "[I]n our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." *State v. Pizzillo*, 7th Dist. Carroll No. 746, 2002-Ohio-446, citing *Boston* at 129.

**{¶49}** We find that, to the extent the detective's response may be deemed an opinion on the credibility of Fisher's testimony, it was harmless because it did not affect a substantial right. The statement was elicited as a result of questioning by the defense regarding the inconsistencies in Fisher's testimony and statements to police. Those inconsistencies were well documented for the jury's consideration and included admissions by Fisher that he had at times omitted details as well as a videotaped interview that demonstrated a minor inconsistency with his trial testimony.

**{¶50}** We find that, viewing the entire record, the detective's statement was harmless error.

**{¶51}** Wilson's fourth assignment of error is overruled.

### V. Sufficiency

**{¶52}** In his fifth assignment of error, Wilson challenges the sufficiency of the evidence supporting his convictions.

**{¶53}** A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387; *Jenks* at paragraph two of the syllabus.

**{¶54}** Wilson argues that (1) the state failed to establish his identity as the perpetrator of all the offenses for which he was charged, (2) the evidence was insufficient

to sustain a conviction of aggravated murder because there was no evidence of prior calculation and design, (3) there was no evidence of restraint to support the two counts of kidnapping and (4) the attempted murder and felonious assault charges involving Vance's children were not supported by the record.

{¶55} Wilson's arguments regarding identity are plainly without merit. Although he challenges the credibility of Fisher's account of the offense, his arguments are wholly subjective and appropriate for a manifest weight challenge, not a sufficiency challenge. There is no dispute that, through Fisher's testimony, the state presented sufficient evidence for all the offenses on the question of identity.

{¶56} We next consider Fisher's argument that the state failed to present sufficient evidence of prior calculation and design to support the charge of aggravated murder. Fisher was convicted of aggravated murder under R.C. 2903.01(A), which provides, in relevant part: "No person shall purposely, and with prior calculation and design, cause the death of another * * * ."

{¶57} "[P]rior calculation and design * * * indicate studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim." *State v. Taylor*, 78 Ohio St.3d 15, 19, 1997-Ohio-243, 676 N.E.2d 82, quoting 1973 Legislative Service Commission Comment to R.C. 2903.01; *State v. Walker*, 2014-Ohio-1827, 10 N.E.3d 200, ¶ 16 (8th Dist.). The phrase is not defined in the Ohio Revised Code; however, the Ohio Supreme Court has interpreted it "to require evidence of 'more than [a] few moments of deliberation'" and "'a scheme designed to implement

the calculated decision to kill.'" *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 38, quoting *State v. Cotton*, 56 Ohio St.2d 8, 381 N.E.2d 190 (1978), paragraph one of the syllabus. In other words, "[i]nstantaneous deliberation is not sufficient to constitute 'prior calculation and design.'" *Cotton* at paragraph two of the syllabus. "[N]either the degree of care nor the length of time the offender takes to ponder the crime beforehand is a critical factor" in and of itself so long as it amounts to more than "momentary deliberation.'" *State v. D'Ambrosio*, 67 Ohio St.3d 185, 196, 616 N.E.2d 909 (1993), quoting the 1973 Legislative Service Commission Comment to R.C. 2903.01. Although "momentary deliberation is insufficient," *D'Ambrosio* at 196, "prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes." *State v. Coley*, 93 Ohio St.3d 253, 264, 2001-Ohio-1340, 754 N.E.2d 1129.

{¶58} The state can prove "prior calculation and design" from the circumstances surrounding a murder in several ways, including: (1) "evidence of a preconceived plan leading up to the murder"; (2) "evidence of the [defendant's] encounter with the victim, including evidence necessary to infer that the defendant had a preconceived notion to kill regardless of how the [events] unfolded" or (3) "evidence that the murder was executed in such a manner that circumstantially proved the defendant had a preconceived plan to kill," such as where the victim is killed in a cold-blooded, execution-style manner. *State v. Orr*, 8th Dist. Cuyahoga No. 100841, 2014-Ohio-4680, ¶ 75, citing *State v. Dunford*, 11th Dist. Ashtabula No. 2009-A-0027, 2010-Ohio-1272, ¶ 53; *State v. Trewartha*, 165

Ohio App.3d 91, 2005-Ohio-5697, 844 N.E.2d 1218 (10th Dist.); *State v. Hough*, 8th Dist. Cuyahoga No. 91691, 2010-Ohio-2770, ¶ 19 ("[I]f the victim is killed in a cold-blooded, execution-style manner, the killing bespeaks aforethought, and a jury may infer prior calculation and design.").

**{¶59}** Whether a defendant acted with prior calculation and design is determined on a case-by-case basis, following an analysis of the specific facts and evidence presented at trial. *Orr* at ¶ 77; *State v. Jones*, 91 Ohio St.3d 335, 345, 744 N.E.2d 1163 (2001); *see also State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 61 ("'Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified.'"), quoting *Cotton* at paragraph three of the syllabus. There is no "bright-line test" for determining the presence or absence of prior calculation and design; however, the Ohio Supreme Court has identified several factors to be weighed along with the totality of the circumstances surrounding the murder in determining the existence of prior calculation and design, including: whether the defendant and the victim knew each other and, if so, whether the relationship was strained; whether there was thought or preparation in choosing the murder weapon or murder site; and whether the act was "drawn out" or "an almost instantaneous eruption of events." *Taylor*, citing *State v. Jenkins*, 48 Ohio

App.2d 99, 102, 355 N.E.2d 825 (8th Dist.1976); *see also State v. Woods*, 8th Dist. Cuyahoga No. 99630, 2014-Ohio-1722, ¶ 25.

{¶60} The state can use either direct evidence or circumstantial evidence to prove the elements of a crime. *See, e.g.*, *State v. Durr*, 58 Ohio St.3d 86, 92, 568 N.E.2d 674 (1991); *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph one of the syllabus; *State v. Bokeno*, 12th Dist. Butler No. CA2011-03-044, 2012-Ohio-4218, ¶ 12. Circumstantial and direct evidence are of equal probative value. *Jenks* at paragraph one of the syllabus. Circumstantial evidence is "proof of facts or circumstances by direct evidence from which the trier of fact may reasonably infer other related or connected facts that naturally or logically follow." *State v. Seals*, 8th Dist. Cuyahoga No. 101081, 2015-Ohio-517, ¶ 32, citing *State v. Beynum*, 8th Dist. Cuyahoga No. 69206, 1996 Ohio App. LEXIS 2143 (May 23, 1996); *see also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind."), quoting *State v. Griesheimer*, 10th Dist. Franklin No. 05AP-1039, 2007-Ohio-837. "[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990).

**{¶61}** In this case, the testimony of Fisher detailed above established that the murder of Vance was "executed in such a manner that circumstantially proved the defendant had a preconceived plan to kill." Wilson was described as entering Vance's apartment in the middle of the night, shooting Fisher and, in conjunction with Alexander, entering Vance's bedroom where she was shot nine times while she slept. We find that the state presented sufficient evidence of prior calculation and design.

**{¶62}** We next consider Wilson's argument that the attempted murder charges pertaining to Vance's children were not supported by sufficient evidence. Wilson argues that apart from the children's presence in the room where Vance was murdered, "there is no indication that they were shot at or physically injured at all."

**{¶63}** The record reflects that Vance's children were in close proximity to her when she was shot nine times: A.V. was asleep in a bed shared with Vance and Z.V. was asleep in a crib next to the bed. In fact, first responders found A.V. laying on top of Vance's body in the bed.

**{¶64}** The Ohio Supreme Court addressed the exact argument before us in *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80. The court held that the doctrine of transferred intent extends the intent associated with the aggravated murder of an intended victim to the intent necessary to support attempted murder charges of "readily identifiable" unintended and unharmed victims placed at risk by the defendant's actions against the intended victim. In reaching its conclusion, the court cited a decision of this district wherein we extended the doctrine of transferred intent for the same purpose in

upholding an attempted murder charge against a defendant who shot his intended victim but also nearly struck a nearby unintended victim. *State v. Wheeler*, 8th Dist. Cuyahoga No. 66923, 1995 Ohio App. LEXIS 2146 (May 25, 1995).

**{¶65}** We find *Dean* and *Wheeler* to be applicable to the facts of the present case where the unintended victims were in close proximity to the intended victim who was struck with nine gunshots. Considering the fact that at least nine shots were fired into the bed where A.V. slept next to Vance, it truly is a miracle that this case does not involve two more homicide victims.

**{¶66}** We reject Wilson's sufficiency argument pertaining to the two counts of attempted murder.

**{¶67}** Finally, because the kidnapping and the felonious assault counts merged into other offenses for which we find no sufficiency errors, we need not address Wilson's sufficiency challenges to those counts. *See State v. Franks*, 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶ 18 (explaining that any sufficiency error as to merged counts would be harmless error); *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14 (holding that when counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless).

**{¶68}** Wilson's fifth assignment of error is overruled.

## VI. Manifest Weight

**{¶69}** In his sixth assignment of error, Wilson argues that his convictions were against the manifest weight of the evidence.

**{¶70}** A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence.

**{¶71}** "When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a 'thirteenth juror' and may disagree 'with the factfinder's resolution of conflicting testimony.'" *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and

two of the syllabus. Reversal on manifest weight grounds is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin*, *supra*.

**{¶72}** Wilson's manifest weight argument is based upon the fact that the state's case was reliant upon the testimony of Fisher whom Wilson asserts was not a credible witness. The deficiencies in Fisher's character including his credibility were fully explored at trial and the jury was in the best position to accept or reject his testimony. Wilson argues that Fisher had a motivation to implicate him and Alexander in the subject offenses due to a prior incident wherein Fisher was arrested for carrying a concealed weapon and tampering with evidence and Wilson and Alexander were listed as "witnesses" in a police report pertaining to the event. However, the state presented testimony that Alexander and Wilson were listed as "witnesses" by the arresting officer solely due to their presence at the scene with Fisher, that Fisher was unaware of that designation and that the juvenile prosecutor had no contact with Alexander or Wilson in relation to the case.

**{¶73}** Wilson's sixth assignment of error is overruled.

**VII. Speedy Trial**

**{¶74}** In his seventh assignment of error, Wilson argues that his speedy trial rights were violated because he executed a speedy trial waiver based on faulty legal advice.

**{¶75}** Wilson argues that he signed a speedy trial waiver on the advice of his trial counsel based on a misrepresentation made by the state that no *Bruton* statement existed

in this case that would bar a joint trial with Alexander. Wilson's counsel alleged that he was unaware of Alexander's statement to police at the time he advised Wilson to enter into a waiver. Wilson conceded to the trial court that if no *Bruton* violation existed, he would have no right to revoke the waiver he now protests.

{¶76} We previously concluded in Wilson's first assignment of error that Alexander's statement did not constitute a *Bruton* violation thereby defeating Wilson's alleged grounds for revocation of his waiver. Furthermore, the record reflects that Wilson did in fact know of Alexander's statement prior to executing his speedy trial waiver. The prosecutor indicated to the court that Alexander's statement was disclosed in a discovery response to Wilson on September 9, 2015. In support of this contention, Wilson filed a motion to sever based upon Alexander's statement on September 30, 2015. Wilson's speedy trial waiver was not executed until October 1, 2015.

{¶77} We find no merit to Wilson's speedy trial argument.

{¶78} Wilson's seventh assignment of error is overruled.

**VIII. Consecutive Sentences**

{¶79} In his eighth assignment of error, Wilson argues that the trial court erred in imposing consecutive sentences that were not supported by the record and in failing to make the required findings under R.C. 2929.14(C)(4).

{¶80} As this court explained in *State v. Johnson*, 8th Dist. Cuyahoga No. 102449, 2016-Ohio-1536, there are two ways a defendant can challenge consecutive sentences on appeal:

First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(b); *State v. Nia*, 8th Dist. Cuyahoga No. 99387, 2014-Ohio-2527, ¶ 16, 15 N.E.3d 892. Second, the defendant can argue that the record does not support the findings made under R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a); *Nia*.

*Johnson* at ¶ 7.

**{¶81}** Pursuant to R.C. 2953.08(G)(2)(a), an appellate court may "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if it "clearly and convincingly" finds that "the record does not support the sentencing court's findings" under R.C. 2929.14(C)(4).

**{¶82}** Pursuant to R.C. 2929.14(C)(4), in order to impose consecutive sentences, the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender, that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and that at least one of the following also applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single

prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶83} The trial court must both make the statutory findings required for consecutive sentences at the sentencing hearing and incorporate those findings into its sentencing journal entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. To make the requisite "findings" under the statute, "'the [trial] court must note that it engaged in the analysis "and that it has considered" the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Id*. at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). A trial court need not give a "talismanic incantation of the words of the statute" when imposing consecutive sentences, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell* at ¶ 37.

{¶84} Wilson first argues that consecutive sentences are clearly and convincingly not supported by the record in that they are in excess of what is necessary to incapacitate him, deter him from committing future crime and rehabilitate him. We find no support for this argument. Wilson's actions in this case resulted in the shooting death of Vance from nine gunshot wounds and the attempted murder of three other victims. We cannot say that consecutive sentences are not supported by the record in this instance.

**{¶85}** Wilson next argues that the trial court did not make the required finding under R.C. 2929.14(C)(4) that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." In this instance the trial court stated that consecutive sentences "would not be disproportionate to the acts in this matter." This court has previously held that a trial court's statement that consecutive sentences were "not disproportionate" was sufficient when viewed within the context of the entirety of the trial court's statements on the imposition of consecutive sentences and the record indicates that the court considered proportionality both with regard to the seriousness of the offender's conduct and the danger he or she poses to the public. *State v. Morris*, 8th Dist. Cuyahoga No. 104013, 2016-Ohio-7614, ¶ 22-34, citing *State v. Crawley*, 8th Dist. Cuyahoga No. 102781, 2015-Ohio-5150; *State v. Cooperwood*, 8th Dist. Cuyahoga Nos. 99309 – 99311, 2013-Ohio-3432.

**{¶86}** We find the trial court's proportionality finding in this instance to be sufficient. The trial court referenced the great and unusual harm caused by Wilson's conduct such that the court's obligation to consider the "seriousness of the conduct" was satisfied. In regard to the danger posed to the public, as in *Morris*, the trial court in this case found that consecutive service of Wilson's sentences was necessary to protect the public. *Morris* held that such a finding coupled with a reference to consecutive sentences not being disproportionate was sufficient to satisfy the court's obligation. *Id.* at ¶ 34.

**{¶87}** Sua sponte, we note that the trial court failed to incorporate its R.C. 2929.14(C)(4) consecutive sentence findings into its sentencing entry as required by *Bonnell*:

> A trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court.

*Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 30.

**{¶88}** Consequently, Wilson's eighth assignment of error is overruled in part and sustained in part.

### IX. Court Costs

**{¶89}** In his ninth assignment of error, Wilson argues that the trial court erred in finding him indigent but nonetheless requiring him to pay off court costs through community work service.

**{¶90}** We find no merit to Wilson's argument. First, the record reflects that Wilson failed to file an affidavit of indigency. This court has held that defendants must file an affidavit of indigency addressing their present and future ability to pay in order for the court to waive fines and costs. *State v. Ledbetter*, 8th Dist. Cuyahoga No. 104077, 2017-Ohio-89, ¶ 19, citing *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 12. A finding of indigency for purposes of appointment of counsel is not sufficient to warrant a waiver of costs and fines at sentencing. *State v. Simpson*, 8th Dist. Cuyahoga No. 101088, 2014-Ohio-4580, ¶ 20.

**{¶91}** Furthermore, even if Wilson had properly been found indigent the trial court retained discretion to impose court costs. *See State v. Minifee*, 8th Dist. Cuyahoga No. 99202, 2013-Ohio-3146, ¶ 36 ("although the trial court found appellant to be indigent, it acted within its discretion under R.C. 2947.23(A)(1) in imposing court costs regardless of appellant's financial status"); *State v. Cooper*, 8th Dist. Cuyahoga No. 104599, 2017-Ohio-970, ¶ 26.

**{¶92}** Wilson's ninth assignment of error is overruled.

**{¶93}** Judgment affirmed; case remanded for the trial court to issue a nunc pro tunc entry in compliance with the requirements of *Bonnell* by incorporating its consecutive sentencing findings into the entry.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for correction of the journal entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

TIM McCORMACK,   J., and
FRANK D. CELEBREZZE, JR., J., CONCUR